IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PETE SZMURLO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 24 C 09900 |
| | ) | |
| TK ELEVATOR CORP. et al., | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendants. | ) | |
| | ) | |

### ORDER

For the reasons outlined below, the defendants' motions to dismiss the complaint [10] [15] [17] [41] [56] [59] are granted, and the plaintiff's motion to amend the pleadings [87] is granted. The complaint is dismissed without prejudice, and the plaintiff may file an amended complaint by 4/25/25. Failure to do so will result in dismissal of the case. In light of the dismissal of the plaintiff's complaint, the following pending motions are denied as moot: motions for a preliminary injunction [75] [126], motion for interlocutory appeal [136], motion to stay [140], motions to reconsider [144], [145], motion to unseal [150], motion for leave to file motion for summary judgment [151], motion for summary judgment [148], motion for leave to file supplemental authority [152], and motion to remand and vacate all orders [154].

### STATEMENT

Plaintiff Pete Szmurlo brings this action for defamation and intentional infliction of emotional distress (IIED) against his former employer, Thyssen Krupp Elevator (TKE), and union, the International Union of Elevator Constructors Local 2 (IUEC).[1] The plaintiff claims that the defendants defamed him by falsely accusing him of unsatisfactory job performance in a written warning, a notice of termination, a hearing before the union's Joint Apprenticeship Committee,

---

[1] An attached exhibit to the operative complaint lists as additional defendants Local 2's Joint Apprenticeship Committee, National Elevator Industry Educational Program, Otis Elevator Co., Schindler Elevator Corp., and Kone, Inc. But the complaint does not allege any wrongdoing on the part of those entities. *See generally* Compl. ECF No. 3-1. Indeed, the complaint mentions them only twice, both times as non-culpable "third parties" who simply received defamatory statements about the plaintiff. *Id.* at ¶¶ 18, 24. As such, the Court finds that the plaintiff has not pleaded a claim against those defendants and grants their respective motions to be dismissed from this action on that basis.

and a position statement provided to an investigator for the Occupational Safety and Health Administration (OSHA). Compl. ¶¶ 8-13, ECF No. 3-1.[2]

The defendants moved to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6). They press four principal arguments: (1) most of the allegedly defamatory statements challenged in the complaint occurred outside the applicable statute of limitations; (2) the remaining statements are not actionable because they are shielded by absolute privilege; (3) the complaint does not allege "extreme and outrageous" conduct rising to the level of IIED; and (4) in any case, § 301 of the Labor Management Relations Act (LMRA) completely preempts the plaintiff's claims. The Court agrees across the board.

As a threshold matter, all but one of the statements at issue were published more than a year before the plaintiff filed this lawsuit. *See* Compl. ¶¶ 8-13 (challenging several statements published in July 2023 notwithstanding the fact that the plaintiff did not commence this action until August 26, 2024).[3] As such, the plaintiff is procedurally barred from challenging those statements as defamatory under Illinois's one-year statute of limitations. *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 923 (7th Cir. 2003); *see also Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005) (noting that claims brought after a limitations period are subject to dismissal under Rule 12(b)(6)).

The only publication that occurred within the one-year limitations period—TKE's position statement to OSHA dated September 19, 2023—cannot support the plaintiff's defamation claim for a different reason: As a legally required statement before a quasi-judicial government body, it is shielded by absolute privilege. *See Mauvais-Jarvis v. Wong*, 987 N.E.2d 864, 882 (Ill. App. Ct. 2013).

To claim defamation under Illinois law, a plaintiff must allege that a defendant made an "unprivileged publication" of a false and damaging statement. *Solaia Tech., LLC v. Specialty Pub. Co.*, 852 N.E.2d 825, 839 (Ill. 2006) (emphasis added); *see also id.* ("A defamatory statement is not actionable if it is privileged."). Statements made during "quasi-judicial proceedings, as well as actions and statements that are necessarily preliminary to such proceedings" are shielded by

---

[2] A more detailed factual overview is available in the Court's order denying the plaintiff's motion to remand. *See* ECF No. 108, at 1-2.

[3] For purposes of resolving this motion, the Court assumes without deciding that the statements contained in TKE's warning letter, termination notice, and union hearing were "published"—an essential element of an Illinois defamation claim. *See Wesly v. Nat'l Hemophilia Found.*, 148 N.E.3d 221, 226 (Ill. App. Ct. 2020). That assumption might be questionable, however, given that those statements were delivered only to the plaintiff and other named defendants rather than a third party. *See id.* ("Publication is the act by which defamatory matter is conveyed to a third party."). If in fact the statements were never "published" within the meaning of Illinois law, the plaintiff's defamation claim would fail for that additional reason as well.

absolute privilege and are therefore not actionable as defamation. *Mauvais-Jarvis*, 987 N.E.2d at 888. Whether a publication is subject to absolute privilege is a question of law appropriately answered on the pleadings. *Mauvais-Jarvis*, 987 N.E.2d at 882.

TKE's position statement is entitled to absolute privilege. TKE provided the statement in response to a federal regulatory agency conducting a live investigation squarely within its statutory remit. *See* Compl., Ex. F at 1 ("OSHA Statement"), ECF No. 3-1; *see also* 29 U.S.C. § 660(c) (authorizing OSHA to investigate charges of discrimination brought under § 11(c) of the Occupational Safety and Health Act). That investigation was "semi-judicial" in nature, given that the Act directs OSHA to assess respondents' civil liability and prosecute any meritorious claims against them in federal district court following the close of investigation. *See id.* Illinois courts have routinely extended absolute immunity in equivalent contexts. *See Richardson v. Dunbar*, 419 N.E.2d 1205 (Ill. App. Ct. 1981) (observing that absolute privilege "encompasses testimony given before administrative agencies or other governmental bodies when such agencies or bodies are performing a judicial function"); *see also*, *e.g.*, *Thomas v. Petrulis*, 465 N.E.2d 1059 (Ill. App. Ct. 1984) (extending absolute privilege to statements made during an investigation by the Equal Employment Opportunity Commission); *Starnes v. Int'l Harvester Co.*, 490 N.E.2d 1062 (Ill. App. Ct. 1986) (same with respect to the Illinois Judicial Inquiry Board); *Parrillo, Weiss & Moss v. Cashion*, 537 N.E.2d 851 (Ill. App. Ct. 1989) (same with respect to the Illinois Department of Insurance). The Court thus finds that Illinois' absolute privilege from defamation attaches to any statements made by the defendants in response to and in the course of OSHA's § 11(c) investigation.[4]

Because TKE's position statement to OSHA—the sole publication not barred under the applicable statute of limitations—provides no grounds for relief, the Court finds that the plaintiff has failed to plead a plausible defamation claim under Illinois law. The claim is therefore dismissed pursuant to Rule 12(b)(6).

The plaintiff's IIED claim fares no better. To assert a claim for IIED, a plaintiff must allege that the defendant engaged in "extreme and outrageous conduct" toward them. *Feltmeier v.*

---

[4] It is more than a little ironic that the very document the plaintiff decries as defamatory was filed in response to a discrimination complaint that he himself lodged against the defendants with OSHA. *See* OSHA Statement 1. In that regard, this case illustrates why absolute privilege for advocacy in judicial and quasi-judicial proceedings is so important. A party is emphatically permitted to mount a robust defense in an adversarial proceeding without subjecting themselves to civil liability. *See Mauvais-Jarvis*, 987 N.E.2d at 882 ("Absolute immunity is extended to communications 'where there is an obvious policy in favor of permitting complete freedom of expression, without any inquiry as to the defendant's motives.'" (quoting William L. Prosser, Torts § 114, at 777 (4th ed. 1971))).

*Feltmeier*, 798 N.E.2d 75, 83 (Ill. 2003). To qualify as extreme and outrageous, "the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." *Id.* "[M]ere insults, indignities, threats, annoyances, petty oppressions, or trivialities" are insufficient to establish IIED. *Duffy v. Orlan Brook Condo. Owners' Ass'n*, 981 N.E.2d 1069, 1079 (Ill. App. Ct. 2012).

The defendants' alleged actions fall far short of extreme and outrageous conduct. "In the employment context, Illinois courts have long recognized that personality conflicts and questioning of job performance are unavoidable aspects of employment." *Parker v. Side by Side, Inc.*, 50 F. Supp. 3d 988, 1023 (N.D. Ill. 2014). Although such conflicts "frequently [] produce concern and distress," they generally will not give rise to an IIED claim unless "the employer's conduct goes well beyond the parameters of the typical workplace dispute." *Id.* (cleaned up) (quotation marks omitted); *see also id.* ("If the distress from workplace discipline, job transfers, and terminations could form the basis of an IIED claim, virtually every employee would have a cause of action." (quotation marks omitted)).

The defendants' conduct falls squarely within the realm of an ordinary workplace dispute. Indeed, describing the statements at issue—a written warning concerning unsatisfactory performance, termination letter on the same grounds, and follow-up testimony explaining the basis for the firing—as "extreme or outrageous" strains credulity. *See DiPietro v. GATX Corp.*, 167 N.E.3d 247, 260 (Ill. App. Ct. 2020) ("[T]he termination of an employee by an employer is not extreme and outrageous just because the employee disputes the merits of the termination and the employer holds power over the employee, since an employee will almost always deny that the termination was warranted and an employer always holds power over an employee.").

Finding no allegations coming close to extreme or outrageous behavior on the part of the defendants, the Court finds that the plaintiff has failed to state a viable IIED claim.

As an alternative basis for dismissal, the defendants also contend that the plaintiff's state tort claims are preempted by § 301 of the LMRA, which provides a cause of action for disputes involving labor organizations. 29 U.S.C. § 185. The Court has already concluded that the LMRA has preemptive force in a separate order, *see* ECF No. 108, and that reasoning need not be repeated in full. Suffice it to say that, because the allegedly defamatory statements at the center of this litigation were dictated by the terms of a collective-bargaining agreement with the plaintiff's employer, the plaintiff's claims are "substantially dependent" on an interpretation of that agreement and are therefore preempted by federal law. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

It follows that the LMRA bars the plaintiff state-law tort challenges to statements made during the grievance process dictated by the defendants' collective-bargaining agreement. *See Hull v. Cent. Transp., Inc.*, 628 F. Supp. 784, 789 (N.D. Ind. 1986) ("State law causes of action which adversely affect the grievance process only serve to undermine the entire collective bargaining

process."). Indeed, "in the narrow context of defamation suits brought for statements made in the grievance process, the detrimental effect of a defamation suit on the grievance process mandates preemption of such a suit." *Id.* Nor can the plaintiff construe his existing allegations as a cognizable cause of action under the LMRA. Because the plaintiff has named his union as a defendant and alleged wrongdoing on its part, his LMRA claim would be considered hybrid. *See Prudden v. E.J. Brach Corp.*, 946 F. Supp. 572, 576 (N.D. Ill. 1996). As such, the claim would trigger the statute's six-month statute of limitations and fail on that basis. *See id.*; *DelCostello v. Int'l Broth. of Teamsters*, 462 U.S. 151, 172 (1983).

For the reasons set forth above, the motions to dismiss are granted, and the complaint is dismissed in full.

Dated: April 4, 2025

John J. Tharp, Jr.
United States District Judge